*23 Opinión concurrente emitida por el
Juez Presidente Señor Hernández Denton,
a la cual se une la Juez Asociada Señora Rodríguez Rodríguez.
Al igual que una mayoría de este Tribunal, entendemos que le corresponde al Consejo de Titulares del Condominio Plaza del Mar pagar por los gastos de la reparación de la baranda del apartamento del Sr. Hermán J. Cestero Aguilar. Sin embargo, emitimos esta Opinión concurrente por entender que las barandas, junto con la parte externa del balcón y los demás componentes de la fachada, son ele-mentos comunes generales voluntarios. Por ende, discrepa-mos del argumento de la mayoría de este Tribunal de que la titularidad de las barandas, como elementos comunes generales necesarios, no pueda ser transferida.
I
El señor Cestero Aguilar es dueño de un apartamento en el Condominio Plaza del Mar (Condominio). En noviem-bre de 2005 notó que la baranda del balcón de su aparta-mento estaba corroída por el moho y que había colapsado. Por entender que el colapso de la baranda lo ocasionó una guindola utilizada para realizar trabajos de pintura en el Condominio, le solicitó a la Junta de Directores (Junta) que la reparara a costa del Consejo de Titulares.
En un principio, la Junta le indicó al señor Cestero Aguilar que la reparación era responsabilidad de él. Luego, le informó que, de no realizar la reparación de la baranda, la administración la repararía y le facturaría el coste. Ante la negativa del titular de reparar la baranda, por entender que era responsabilidad de la Junta, esta última acudió al Tribunal de Primera Instancia (TPI) en abril de 2006. Allí, solicitó un interdicto para ordenar que el señor Cestero *24 Aquilar proveyera acceso al apartamento para realizar los trabajos de reparación. El TPI declaró “con lugar” el inter-dicto y ordenó al señor Cestero Aguilar que permitiera la entrada a su apartamento.
Tras reparar la baranda, mediante carta de 14 de no-viembre de 2008, la Junta le remitió una factura de más de $6,000 al señor Cestero Aguilar por los gastos de la repa-ración y los gastos legales en que incurrió. Por esto, el titular presentó una querella ante el Departamento de Asuntos del Consumidor (D.A.Co.) y alegó que era respon-sabilidad de la Junta reparar dicha baranda. Por su parte, la Junta planteó que en el 2005 los titulares habían acor-dado transferir la titularidad de las barandas a los dueños de los apartamentos, y con esto su mantenimiento. Ade-más, adujo que así se había hecho constar en el reglamento aprobado en el 2008.
El D.A.Co. determinó que la baranda del balcón era un elemento común del condominio y que era parte de la fa-chada, por lo que la Junta era quien tenía la obligación de repararla. Por tal razón, concluyó que el acuerdo de trans-ferencia de titularidad de las barandas, como elementos comunes, y la enmienda al Reglamento, eran nulos por no contar con el consentimiento unánime de los titulares. El Tribunal de Apelaciones confirmó al D.A.Co. por los mis-mos fundamentos.
Así las cosas, la Junta comparece ante este Tribunal y nos solicita que revoquemos al foro apelativo intermedio por entender, principalmente, que el acuerdo adoptado por el Consejo de Titulares es válido y que, por ello, es válida una enmienda al Reglamento para incorporar que la titu-laridad y el mantenimiento de las barandas les corres-ponde a los titulares, por lo que el señor Cestero Aguilar debe saldar la deuda. Discrepamos de la mayoría de este Tribunal, que, aunque confirma al Tribunal de Apelacio-nes, lo hace por fundamentos distintos.
*25 II
La controversia ante nuestra consideración es a quién le corresponde el pago de la reparación de la baranda del apartamento del señor Cestero Aguilar. Para contestar a esta interrogante, es necesario determinar qué tipo de ele-mento es la baranda. Así, podremos aclarar cuáles acuer-dos son permitidos para transferir, alterar o reparar las barandas. Debido a que coincidimos con la mayoría de este Tribunal en que las barandas son parte de la fachada, co-menzaremos nuestra discusión analizando el tipo de ele-mento que es la fachada y los acuerdos a los que pueda estar sujeta.
La clasificación de los elementos que componen un in-mueble sometido al régimen de propiedad horizontal res-ponde, particularmente, a que el apartamento, y como con-secuencia, la maximización de su disfrute, son el centro del régimen. Véanse: Rivera Rodríguez v. Junta Dir. I y II, 173 D.P.R. 475, 481 (2008); Art. 1-A de la Ley de Condominios, 31 L.P.R.A. sec. 1291 n. Con este propósito, la Ley Núm. 103 de 5 de abril de 2003, según enmendada, Ley de Condominios, 31 L.P.R.A. sec. 1291 et seq. (Ley de Condomi-nios), clasifica los elementos que componen el régimen de propiedad horizontal en elementos comunes y privativos. A su vez, desde Arce v. Caribbean Home Const. Corp., 108 D.P.R. 225 (1978) (Arce), hemos establecido que los elemen-tos comunes se pueden catalogar como necesarios o volun-tarios, de acuerdo con el Art. 11 de la Ley de Condominios, 31 L.P.R.A. 1291i, que dispone:
(a) Se consideran elementos comunes generales necesarios, no susceptibles de propiedad individual por los titulares y su-jetos a un régimen de indivisión forzosa los siguientes:
(1) El vuelo ....
(2) Los cimientos, paredes maestras y de carga, techos, ga-leras, escaleras y vías de entrada y salida o de comunicación.
*26 (6) Cualquier otro elemento que fuere indispensable para el adecuado disfrute de los apartamientos en el inmueble.
Cualquier pacto que transfiera la titularidad, posesión o control de estos elementos a otra persona natural o jurídica distinta del Consejo de Titulares será nulo.
(b) Se consideran elementos comunes generales, salvo dispo-sición o estipulación en contrario los siguientes:
(1) El terreno, los sótanos, azoteas, patios y jardines.
(2) Los locales destinados a alojamiento de porteros o encargados.
(3) Las áreas destinadas a estacionamiento.
(4) Las áreas recreativas que excedan lo requerido por la reglamentación urbana o por las autoridades competentes.
La adjudicación de las áreas o elementos comunes antes enu-merados, requerirá que así se haya dispuesto en la escritura de constitución del régimen o, de realizarse la conversión y trans-ferencia luego de constituida éste, se requerirá el consenti-miento unánime de los titulares. La transferencia deberá ins-cribirse en el Registro de la Propiedad, dejando constancia de los nuevos porcentajes de participación para cada uno de los apartamientos beneficiados. (Énfasis suplido.)
La diferenciación constituida entre un elemento necesa-rio y uno voluntario se fundamenta en su indispensabili-dad para el disfrute del apartamento. Aquel elemento co-mún, cuyo uso común sea indispensable, siempre se caracterizará como necesario, no susceptible de aprovecha-miento independiente y sujeto a la titularidad de todos los titulares. Arce, supra. Por otra parte, el mismo Art. 11 de la Ley de Condominios, supra, establece las facultades dis-positivas de los titulares sobre los elementos comunes vo-luntarios mediante acuerdo por unanimidad. Es decir, per-mite que un elemento común se convierta en un elemento privativo, sujeto a la titularidad de uno o varios titulares, dado que su uso común no es indispensable para el disfrute del apartamento.
Al mismo tiempo, los elementos comunes se pueden cla-sificar en generales o limitados de acuerdo a quién posea el derecho al uso del elemento. Los generales están destina-" dos al uso de todos los condominos. En cambio, los limita-dos están reservados al uso de varios titulares con exclu- *27 sión de los demás. A falta de disposición en contrario en la Escritura Matriz del inmueble, los elementos comunes se presumen generales. De esta forma, para limitar su uso, en variación a la Escritura Matriz, se necesita el consenti-miento unánime de todos los titulares. Art. 12 de la Ley de Condominios, 31 L.P.R.A. sec. 1291j.
Así como la titularidad y/o el derecho al uso de un ele-mento común pueden recaer en uno, varios o todos los ti-tulares, correlativamente, el mantenimiento será a cargo del dueño o del que lo use con exclusión de los demás. Véase Art. 39 de la Ley de Condominios, 31 L.P.R.A. sec. 1293c. Cabe aclarar que, en el caso de los elementos comu-nes necesarios, les corresponde el mantenimiento a todos los titulares a prorrata según sus cuotas de participación. Sin embargo, si un elemento común se convierte en priva-tivo, lo que ocurre es que ese espacio se suma al área superficial del apartamento y, por lo tanto, es un elemento que no tiene que presupuestarse para propósitos del man-tenimiento del inmueble. En este caso, el dueño del apar-tamento es el que se encarga de su mantenimiento como del resto de su apartamento. A su vez, de limitarse el uso, sin cambiar la titularidad del elemento en cuestión, los gastos de mantenimiento se prorratearán de acuerdo con las cuotas de participación de sus usuarios. Véase Brown III v. J.D. Cond. Playa Grande, 154 D.P.R. 225 (2001); Arce, supra.
De lo anterior, podemos distinguir que por unanimidad se puede cambiar la titularidad de un elemento común vo-luntario y se puede limitar el uso de un elemento común general. En cambio, los elementos comunes necesarios no están sujetos a ningún acuerdo que transfiera su titularidad.
Por otra parte, con relación a la fachada, el Art. 15 de la Ley de Condominios, 31 L.P.R.A. 1291m(d)-(e), establece que:
(d) Cada titular deberá ejecutar a sus únicas expensas las *28 obras de modificación, reparación, limpieza, seguridad y mejo-ras de su apartamiento, sin perturbar el uso y goce legítimo de los demás. Será deber ineludible de cada titular realizar las obras de reparación y seguridad, tan pronto sea necesario para que no se afecte la seguridad del inmueble ni su buena apariencia. Todo titular u ocupante de un apartamiento ven-drá obligado a permitir en su unidad las reparaciones o traba-jos de mantenimiento que exija el inmueble, permitiendo la entrada al apartamiento para su realización.
(e) Ningún titular u ocupante podrá, sin el consentimiento de todos los titulares, cambiar la forma externa de la fachada, ni decorar las paredes, puertas o ventanas exteriores con co-lores o tonalidades distintas a las del conjunto. Se entiende por fachada el diseño del conjunto arquitectónico y estético exterior del edificio, según se desprende de los documentos constitutivos del condominio.
Asimismo, en Junta Dir. Cond. Montebello v. Torres, 138 D.P.R. 150, 155 (1995), dijimos que la premisa inarticulada de estas restricciones —de no alterar unilateralmente la fachada— es que las consideraciones arquitectónicas y es-téticas de la fachada de un edificio son parte de los crite-rios principales utilizados por un titular para adquirir un apartamento en un edificio determinado. Con ello en mente, establecimos que la fachada, como conjunto arqui-tectónico y estético exterior del edificio, es un elemento co-mún, sujeto a la prohibición de alteración unilateral que establece el Art. 15 de la Ley de Condominios, supra. Id., pág. 156. Así, determinamos que un cambio realizado uni-lateralmente por un titular que alteró la parte externa del balcón fue una violación a dicha restricción.
La Ley de Condominios no provee una descripción de los elementos que componen la fachada ni describe a quién corresponde la titularidad de estos elementos. Es por ello que debemos analizar si, ya que establecimos en Junta Dir. Cond. Montebello, supra, que la fachada es un elemento común, es, a su vez, necesario o voluntario.
Según estos preceptos, no coincidimos con el funda-mento adoptado por la mayoría de este Tribunal de que la *29 fachada es un elemento común necesario, sujeto a la pro-hibición de cambiar su titularidad. Veamos.
III
Es evidente que una parte de un apartamento puede ser, simultáneamente, una parte proporcional de la fa-chada de un inmueble sometido al régimen de propiedad horizontal. Es por ese concurso entre el apartamento y la fachada que existe la restricción de que un titular no puede alterar unilateralmente esa parte pues, como consecuen-cia, se desfiguraría el conjunto estético y el diseño arqui-tectónico del exterior del edificio.
Sin embargo, el Art. 15 de la Ley de Condominios, supra, permite, y así lo hemos confirmado, que se altere la fachada si se realiza con el consentimiento unánime de to-dos los titulares. Según esas circunstancias, los propios ti-tulares habrían acordado sacrificar uno de los criterios uti-lizados para adquirir el apartamento, es decir, la uniformidad del conjunto arquitectónico y estético exterior del edificio. Siendo así, dado que es la misma Ley de Con-dominios la que permite prestar el consentimiento para las alteraciones, ¿qué propósito tiene establecer que un ele-mento de la fachada no pueda ser privado? El efecto que tiene alterar la titularidad de la fachada sería el mismo, una alteración a la fachada. La diferencia es que el Art. 15 lo permite sin expresar nada sobre la titularidad del elemento. Además, cónsono con las facultades dominicales de los titulares, solo podría transferirse por unanimidad. Con esto, ya que establecimos mediante jurisprudencia que la fachada es un elemento común, podríamos pronunciar que estamos ante un elemento común voluntario.
Una vez más, sostenemos que el centro del régimen de la horizontalidad es el disfrute del apartamento. Por lo tanto, los elementos comunes sirven ese propósito: el apro-vechamiento de la propiedad individual. Por ello, un ele- *30 mentó es necesario porque su uso común es indispensable para el disfrute del apartamento. Así, por ejemplo, es indispensable la vía de acceso al inmueble, pues, de lo con-trario, el titular no podría entrar y llegar a su apartamento. En cambio, los elementos voluntarios, aun-que su uso puede ser común, al dicho uso no ser indispensable, se pueden privatizar. Por ello, mediante unanimidad se puede destinar a un solo apartamento.
Como consecuencia, entendemos que la fachada, recono-ciendo que es uno de los criterios utilizados por los titula-res para adquirir el apartamento, debe ser un elemento común voluntario. Ello, pues, por un lado, ya la propia ley permite que se altere el conjunto arquitectónico y estético, lo que afirma que ese es un criterio al que pueden renun-ciar todos los titulares. Asimismo, como consecuencia de que la fachada es el conjunto arquitectónico o estético exterior, es claro que su uso común responde al aspecto visual que tienen los titulares, el cual, sostenemos, no es un uso indispensable para el disfrute del apartamento. De serlo, la Ley de Condominios proscribiría cualquier altera-ción a la fachada.
De este modo, ya que los titulares pueden renunciar a que la fachada se altere, y ya que su uso común no es indispensable, no vemos ningún obstáculo en la ley o en la jurisprudencia a que su titularidad se pueda convertir. De hecho, ¿qué sentido tendría para los titulares que hayan aprobado por unanimidad una alteración en la fachada mantener la titularidad sobre esa parte proporcional de la fachada que ya está desfigurada?
No obstante, la mayoría de este Tribunal ha optado por categorizar las barandas junto con cualquier elemento de la fachada como un elemento general necesario. Aunque coincidimos con que es posible un acuerdo entre todos los titulares respecto a que cada titular se encargue del man-tenimiento de las barandas, reiteramos que no estamos de acuerdo con que su titularidad no se pueda transferir.
*31 Como bien dice la Opinión mayoritaria, las barandas fijan los límites del balcón y brindan seguridad y protec-ción a los titulares y visitantes del edificio. Por tal razón, con relación a la seguridad, es evidente que las barandas tienen un uso individual por cada titular de cada apartamento.
Así las cosas, no nos cabe duda de que las barandas de los balcones, al igual que la parte externa del balcón, for-man parte de la fachada, pues su alteración desfiguraría el conjunto arquitectónico y estético del edificio. Sin embargo, el hecho de que el propio Art. 15 de la Ley de Condominios, supra, permita la alteración de una parte de la fachada es suficiente para concluir que no es indispensable su uso co-mún, por lo que no es un elemento común necesario.
En resumen, entendemos que las barandas, así como la parte externa del balcón son componentes de la fachada. Del mismo modo, sostenemos que la fachada es un ele-mento común voluntario, cuya titularidad puede ser transferida. No nos cabe duda de que la unanimidad es el mecanismo correcto para preservar los derechos de domi-nio de los titulares sobre los elementos comunes. Por tal razón, cualquier cambio en la titularidad de un compo-nente de la fachada debe ser aprobado unánimemente por todos los titulares.
De acuerdo con lo anterior, confirmaríamos al foro ape-lativo intermedio pero por los fundamentos aquí discutidos. Así, declararíamos nulo el acuerdo de cambio de titularidad del Condominio por no contar con el consenti-miento unánime de los titulares, no porque no se admita pacto que transfiera su titularidad como expresa la mayo-ría de este Tribunal. Además, ordenaríamos al Consejo de Titulares que pagara por la reparación de la baranda del balcón del señor Cestero Aguilar. Por entender que este debe ser el análisis utilizado para resolver la controversia ante nos, concurrimos.